IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**SUSAN K. HARTMAN**,

                    Plaintiff                         Civil No. 3:10-cv-06305-ST

             v.                            **FINDINGS AND**
                                                      **RECOMMENDATION**

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

                    Defendant.

STEWART, Magistrate Judge:

     Plaintiff, Susan Hartman ("Hartman"), seeks judicial review of the Social Security

Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act ("Act").  This court has jurisdiction under 42 USC

§ 405(g).  For the following reasons, the Commissioner's decision should be affirmed.

1 -  FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

Born in 1949, Hartman alleges disability since February 14, 2006 (Tr. 109[1]), due to arthritis in both knees, post-traumatic stress disorder, anxiety, depression, tinnitus, obesity, short term memory loss, ankle injury, hypertension, and high cholesterol.  Tr. 125.  She has a high school education and three years of college (Tr. 131) and reports past work as a bus driver, home health care provider, mobile equipment officer, and security officer.  Tr. 126.

The Commissioner found Hartman disabled as of June 1, 2007.  Tr. 74.  Hartman appealed the determination that she was not disabled before that date, and appeared at a hearing before an Administrative Law Judge ("ALJ") on April 14, 2010.  Tr. 31-72.  On April 30, 2010, the ALJ found Hartman not disabled from February 14, 2006, through May 31, 2007.  Tr. 16-25. The Appeals Council denied review of that decision on August 26, 2010.  Tr. 1-3.  The Appeals Council decision is a final decision of the Commissioner, subject to review by this court. 20 CFR § 410.670a.

## BACKGROUND

### I.    Medical Record

The medical record before this court primarily addresses Hartman's knee impairments, and includes psychological and physical capacity evaluations performed for Vocational Rehabilitation services.

---

[1]  Citations to "Tr." refer to indicated pages in the official transcript of the Administrative Record filed with the Commissioner's Answer on February 11, 2011 (docket # 6).

On November 16, 2004, Thomas J. Hasbach, M.D. diagnosed Hartman with "tricompartmental degenerative arthritis" of both knees. Tr. 548. He opined that Hartman carried high surgical risk due to her morbid obesity. Tr. 549.

On January 19, 2007, Steve Pethwick, Ph.D., a psychologist, evaluated Hartman for Vocational Rehabilitation. Tr. 242-47. He diagnosed major depressive disorder and post-traumatic stress disorder "by history" and noted that Hartman had a "slight relative weakness related to short-term memory," but scored "average" on her memory testing scores. Tr. 246. Dr. Pethwick suggested that Hartman would benefit from medication and counseling and "may also benefit from a hand-held tape recorder to assist her with remembering verbally presented information." Tr. 247. He articulated no specific work restrictions.

On April 2, 2007, Christopher Park, an occupational therapist, also evaluated Hartman for Vocational Rehabilitation services. Tr. 250-56. Based on the results of a variety of functional and his observations during testing, Park concluded that Hartman could perform sedentary work. Tr. 255. He specifically concluded that Hartman had difficulty standing, walking, "moving to and from below knee level," handling materials weighing more than ten pounds, and difficulty balancing, climbing, kneeling, and squatting, and thus should avoid "standing, walking, climbing and uneven terrain." *Id.*

Based on dexterity and coordination tests, Park concluded that Hartman "demonstrated few drops or fumbles while repetitively reaching and manipulating" circular wooden disks. Tr. 252. He continued:

> She was observed to score well below the first percentile on this standardized test of dexterity and coordination. She demonstrated functional prehension and dexterity with right and left hands and digits. Her below average score is likely due to slow upper

3 - FINDINGS AND RECOMMENDATION

> extremity movement and coordination, rather than any deficit in
> prehension or finger dexterity.  The results of this standardized
> dexterity test indicate that Susan is a poor candidate for machine
> paced, repetitive or production type work.

*Id.*

After losing some weight, Hartman obtained a total left knee replacement ("arthroplasty") on October 22, 2007.  Tr. 302-03.  Orthopedic surgeons performed the same operation on Hartman's right knee on December 3, 2007.  Tr. 329-35.

On January 8, 2008, Hartman was admitted to the hospital for a total dislocation of her right knee.  Tr. 347.  After a manipulative procedure was performed under anaesthesia (Tr. 352), additional surgery was performed on January 9, 2008.  Tr. 354.

Treating physician Delta D. Ruscheinsky, M.D., followed Hartman between June 22, 2007, and May 22, 2009.  Tr. 422-72.  During this time she assessed Hartman's knee pain, conducted post-surgical care, and also treated Hartman's depression.  *Id.*

Robb N. Larsen, M.D., diagnosed Hartman with bilateral carpal tunnel syndrome on August 22 and October 3, 2008.  Tr. 488-89.  He based this diagnosis upon a clinical history and examination.  *Id.*

## II.    <u>Hartman's Testimony</u>

### A.    <u>Written Testimony</u>

#### 1.    <u>Function Report</u>

Hartman completed a "function report" on October 5, 2007.  Tr. 166-73.  She wrote that she cares for her animals, prepares meals, watches television, talks on the phone, and "checks Craigslist." Tr. 166.  Sometimes she goes shopping, visits friends, or completes a project.  *Id.* She swims two or three days per week.  *Id.* Hartman wrote that she has a hard time putting on

4 - FINDINGS AND RECOMMENDATION

shorts, shoes, and socks.  Tr. 167.  She does laundry, but not much house cleaning.  Tr. 168.  She

usually uses a motorized cart when shopping.  Tr. 169.  Her hobbies include watching television,

aerobic exercise, swimming, and hot tubbing.  Tr. 170.  She goes to movies, visits friends and

family in their homes or her own, and attends a social group twice a month.  *Id*.  Her daughter

will not talk to her because of her suicidal behavior.  Tr. 171.

Hartman endorsed limitations in lifting, squatting, bending, standing, reaching, walking,

sitting, kneeling, hearing, and in stair climbing, memory, completing tasks, concentrating,

understanding, following instructions, and getting along with others.  Tr. 171.  She stated that she

can walk 1/8-1/4 of a block, or less, and then must sit and rest 5-10 minutes.  *Id.*

## 2.    Pain Questionnaire

Hartman also completed a pain questionnaire on October 5, 2007.  Tr. 174-76.  She

reported pain in her knees, ankle, right shoulder blade, and chin.  Tr. 174.  This pain lasts all day

and all night and is caused by standing, carrying heavy items, and using the stairs or a ladder.  *Id.*

Walking or twisting her knee worsens her pain which is relieved by rest, ice, and "a good cold

beer."  Tr. 174.  To control her pain, she takes ibuprofen and Tylenol.  Tr. 175.  She must rest

after ten minutes of activity, and cannot perform household chores, walk long distances, go to

social events that require walking, or play sports.  *Id.*

## B.    Hearing Testimony

At her April 14, 2010, hearing, Hartman first described her work attempts through

Vocational Rehabilitation services and explained that she stopped working because she did not

feel safe in her last work environment.  Tr. 36-37.  She then described her past work.  Tr. 39-41.

She stated that the greatest obstacle to employment before her 2007 knee surgeries was her knee

pain and inability to walk.  Tr. 41.  During this time, she took ibuprofen for her knee pain and

had no health insurance.  Tr. 42.  She also "stayed home and relaxed all that I could" and was

unable to walk far.  Tr. 44.

Hartman testified that she worked as a home health aid during an unspecified period and

required frequent breaks to rest her knees.  Tr. 44-45.  Between February 2006 and June 2007,

she had difficulty concentrating, remembering, and completing tasks.  Tr. 46.  Hartman initially

recalled receiving her carpal tunnel diagnosis approximately a year before her April 2010

hearing, but, in response to further questioning, thought she had carpal tunnel syndrome in 2006.

Tr. 52.  Finally, Hartman described her assembly line work at Datalogic Scanning.  Tr. 60-62.

## III.    **Third-Party Testimony**

Harman's friend, Kim Chapman, completed a third-party report on October 1, 2007.

Tr. 158-65.  She wrote that Hartman sits at home, goes to the store, fixes meals, sits at a

computer, visits family and friends, and attends a social group twice a month.  Tr. 158.  Hartman

cares for a small dog and four cats.  Tr. 159.  She has a hard time bending to put on socks and

shoes, pulls clumps of her hair out when stressed, prepares simple meals, and performs light

housework, but is no longer able to do yard work due to knee pain.  Tr. 160-61.  She shops once

a week using a motorized cart or leaning on a shopping cart, watches television, uses a computer,

and goes out to movies and dinner.  Tr. 162.  Hartman's daughter and some old friends no longer

speak to her due to her poor social skills.  Tr. 163.

Chapman endorsed limitations in Hartman's ability to lift, squat, bend, stand, walk, sit,

kneel, and climb stairs, as well as her memory, ability to complete tasks, concentrate, understand,

and follow instructions.  *Id.*  She also wrote that Hartman can walk approximately 50 yards and

6 - FINDINGS AND RECOMMENDATION

then must rest 5-10 minutes, can pay attention for short periods of time and must receive spoken instructions "repeatedly and slowly." *Id.*

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act.  20 CFR § 404.1520; *Bowen v. Yuckert*, 482 US 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled.  20 CFR § 404.1520(a)(4)(i).  At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement.  20 CFR §§ 404.1509; 404.1520(a)(4)(ii).  If the claimant does not have such a severe impairment, she is not disabled.  *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations.  20 CFR § 404.1520(a)(4)(iii).  If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments.  20 CFR § 404.1520(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four.  20 CFR § 404.1520(a)(4)(iv).  If the claimant can perform her past relevant

work, she is not disabled.  If the ALJ finds that the claimant's RFC precludes performance of her

past relevant work, or that the claimant has no past relevant work, the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing

work existing in the national economy.  *Yuckert*, 482 US at 142; *Tackett v. Apfel*, 180 F3d 1094,

1099 (9th Cir 1999); 20 CFR § 404.1520(a)(4)(v), (f).  If the claimant cannot perform such work,

she is disabled.  *Id.*

The initial burden of establishing disability rests upon the claimant.  *Tackett*, 180 F3d at

1098.  If the process reaches step five, the burden shifts to the Commissioner to show that "the

claimant can perform some other work that exists in the national economy, taking into

consideration the claimant's residual functional capacity, age, education, and work experience."

*Id* at 1100.  If the Commissioner meets this burden the claimant is not disabled.  20 CFR

§ 404.1520(g).

## THE ALJ'S FINDINGS

At step two, the ALJ found Hartman's bilateral osteoarthritis of the knee, morbid obesity,

personality disorder, adjustment disorder, post-traumatic stress disorder, and depressive disorder

to be "severe" impairments.  Tr. 19.  At step three, he found that these impairments did not meet

or equal the Commissioner's Listings (*id*) and assessed Hartman's RFC as follows:

> [T]he claimant had the residual functional capacity to lift and/or
> carry 10 pounds occasionally and less than 10 pounds frequently,
> stand and/or walk two hours in an eight hour workday, and sit six
> hours in an eight hour workday.  She could occasionally balance,
> stoop, and climb ramps and stairs; however she was precluded
> from performing all other postural activities.  The claimant should
> have no more than frequent exposure to extreme cold and no more
> than occasional exposure to workplace hazards.  She was limited to
> performing simple, routine, repetitive tasks; this would be
> equivalent with unskilled . . . work.

Tr. 21.

The ALJ subsequently found that this RFC allowed Hartman to perform her past relevant work as a product assembler (Tr. 24) and, therefore, concluded that Hartman was not disabled between her alleged onset date of February 14, 2006, and May 31, 2007, the date the Commissioner found her disabled.  Tr. 25.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 USC § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004).  "Substantial evidence" means "more than a mere scintilla, but less than a preponderance."  *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F3d 1219, 1222 (9th Cir 2009), quoting *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion.  *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998).  The reviewing court may not substitute its judgment for that of the Commissioner.  *Id*, citing *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  *Id.*; *see also Batson*, 359 F3d at 1193.  However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings.  *Bray*, 554 F3d at 1225-26, citing *SEC v. Chenery Corp.*, 332 US 194, 196 (1947).

9 - FINDINGS AND RECOMMENDATION

**FINDINGS**

Hartman challenges the ALJ's findings addressing her credibility, the credibility of a lay witness (Kim Chapman), and her RFC for the time period between February 14, 2006, and May 31, 2007.  As a result, she asserts that the ALJ erroneously found that she could perform her past relevant work during this period.

**I.      Hartman's Credibility**

**A.      Legal Standards**

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence."  20 CFR § 404.1529(a).  In the Ninth Circuit, once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible.  *Lingenfelter*, 504 F3d at 1036, citing *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995), citing *Bunnell v. Sullivan*, 947 F2d 341, 345-46 (9th Cir 1991) (*en banc*).  The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen*, 80 F3d at 1284.  The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Id.*  The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony

"is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F3d at 883; *see also Bunnell*, 947 F2d at 346-47.

**B.    Analysis**

Hartman asserts that the ALJ improperly rejected her testimony by putting "the cart before the horse" and citing only his own RFC assessment. Tr. 22 ("[T]he statements of [Hartman] concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment.")

Hartman mischaracterizes the ALJ's decision. The ALJ's analysis pertaining to Hartman's credibility cited her inconsistent statements, poor work history, failure to seek regular medical treatment, and use of conservative pain treatment. Tr. 23-24. The ALJ also cited Hartman's ability to care for herself, and her social activities, such as going to movies with friends. Tr. 21. Throughout his analysis, the ALJ also discussed the medical record. Tr. 21-24.

The ALJ's credibility analysis may cite a claimant's inconsistent statements and work history. *Smolen*, 80 F3d at 1284. The ALJ may also cite a claimant's failure to seek treatment, *Fair v. Bowen*, 885 F2d 597, 603 (9th Cir 1989), and use of conservative treatment. *Tommasetti v. Astrue*, 533 F3d 1035, 1039-40 (9th Cir 2008). Finally, the ALJ may cite a claimant's medical record in conjunction with these factors. *Robbins*, 466 F3d at 883. The ALJ's credibility findings do just that and are supported by the record. Hartman described the activities cited by the ALJ (Tr. 166-70) and additionally stated that she relied upon ibuprofen and Tylenol, rather than upon prescription pain medication. Tr. 175.

Hartman's argument fails to acknowledge that the ALJ made appropriate findings pertaining to her activities of daily living and conservative treatment which she does not

challenge.  Instead, she relies solely on an excerpt of the ALJ's decision which simply conveys

the general concept that the RFC assessment includes those statements by Hartman found

credible by the ALJ and excludes her other statements found not credible.  This is nothing more

than conclusory boilerplate language preceding the list of reasons supporting that conclusion.

Thus, the ALJ's credibility findings should be affirmed.

## II.    Lay Witness Testimony

### A.    Legal Standards

The ALJ has a duty to consider lay witness testimony.  20 CFR §§ 404.1513(d),

404.1545(a)(3); *Bruce v. Astrue*, 557 F3d 1113, 1115 (9th Cir 2009).  Friends and family

members in a position to observe the claimant's symptoms and daily activities are competent to

testify regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F3d 915, 918-19 (9th Cir 1993).

The ALJ may not reject such testimony without comment and without giving reasons germane to

the witness.  *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996).

### B.    Analysis

The ALJ summarized Chapman's testimony, noting that she cited Hartman's poor social

skills, yet admitted that she attended a social group twice monthly.  Tr. 22.  He also stated that

Chapman "parroted" Hartman's statements regarding her physical limitations.  *Id.*

The ALJ may reject lay testimony that is predicated upon reports of a claimant properly

found not credible.  *Valentine v. Comm'r*, 574 F3d 685, 694 (9th Cir 2009).  The record shows

that Chapman and Hartman similarly described Hartman's social and physical limitations.  Both

stated that she visits with friend, goes out to movies and dinner, and is limited in lifting,

squatting, bending, standing, walking, sitting, kneeling, and stair climbing.  Tr. 158, 163, 170-71.

As discussed above, the ALJ provided clear and convincing reasons to reject Hartman's testimony concerning the extent of her symptoms pertaining to the period before May 31, 2007. These same reasons are also germane for rejecting Chapman's observations which were similar to Hartman's testimony. Furthermore, Chapman's testimony relates to Hartman's limitations in October 2007 after the time period at issue here. Thus, the ALJ's evaluation of the lay testimony should be affirmed.

## III.    RFC Assessment

Hartman asserts that the ALJ erroneously evaluated her RFC pertaining to the period between February 14, 2006, and May 31, 2007. She specifically challenges the ALJ's findings regarding Park, her occupational therapist, and her alleged "psychological problems."

### A.    Occupational Therapist Park

In evaluating Hartman for Vocational Rehabilitation Services on April 2, 2007, Park performed various functional tests and concluded that Hartman could perform "sedentary" work. Tr. 255. Under "recommendations," he stated that "the most difficult activities for Susan include standing, walking, moving to and from below knee level, materials handling greater than 10#, balance, climbing, kneeling and squatting." *Id.* Park also stated that Hartman would benefit from a position that is "primarily sitting in nature" and "should avoid standing, walking, climbing, and uneven terrain." *Id.* His conclusions did not reference specific upper-body restrictions.

The ALJ discussed Park's April 2007 opinion, and noted the exertional limitations Park assessed in some detail. Tr. 22. The ALJ gave "significant weight" to that assessment. Tr. 23.

Hartman asserts that the ALJ failed to consider Park's April 2007 comment that she "is a

13 - FINDINGS AND RECOMMENDATION

poor candidate for machine paced, repetitive or production type of work." Tr. 252. Park made this remark after noting that Hartman "demonstrated a few drops or fumbles" when performing a manipulation exercise which was "likely due to slow upper extremity movement and coordination, rather than any deficit in prehension or finger dexterity." *Id*.

As the Commissioner notes, Hartman neither asserted nor established an impairment that would cause upper-body limitations. While Hartman received a carpal tunnel diagnosis in August 2008 (Tr. 489), this diagnosis does not pertain to the period prior to May 31, 2007, during which Hartman now asserts she is disabled. Moreover, neither Hartman nor Chapman reported any difficulty "using hands" in their October 2007 written reports. Tr., 163, 171.

The ALJ was required to include only limitations stemming from medically determinable impairments in his RFC assessment. 20 CFR § 404.1545(a)(2). The record does not support Hartman's assertion that she had an upper-body impairment during the period prior to May 31, 2007, presently under review. Thus, her challenge to the RFC assessment based on Park's remarks regarding her alleged upper body limitations should be rejected.

### B.    Psychological Limitations

Hartman also asserts that the ALJ failed to properly consider her alleged psychological limitations in her RFC. At step three, the ALJ found that Hartman has "moderate" restrictions in concentration, persistence, and pace (Tr. 20), and subsequently limited Hartman to "performing simple, routine, repetitive tasks; this would be equivalent with unskilled . . . work." Tr. 21.

Hartman first points to her alleged difficulties with concentration and focus described by herself and the lay witness. Because the ALJ properly rejected Hartman's testimony and that of the lay witness, this assertion should be rejected.

Hartman also asserts that, as a matter of law, the ALJ's RFC assessment restricting her to "simple" work improperly accounted for the ALJ's findings regarding her "moderate" limitations in concentration, persistence, and pace at step three. The RFC assessment represents all of a claimant's work-related limitations, including non-severe limitations. 20 CFR § 404.1545(a)(1-2). An RFC restricting a claimant to "simple" tasks, if based upon the record, may be consistent with a moderate or mild limitation in concentration, persistence, and pace. *Stubbs-Danielson v. Astrue*, 539 F3d 1169, 1173-74 (9th Cir 2008).

Hartman points to previous findings by this court addressing moderate or mild limitations in concentration, persistence, and pace and an RFC restricting a claimant to "simple" work. This court has found that such a work restriction alone, without further explanation by the ALJ, does not adequately capture a "moderate" limitation in concentration, persistence, and pace. *Berjettej v. Astrue*, No. 3:09-cv-00892-BR,  2010 WL 3056799 at *7-8 (D Or July 30, 2010), *quoting Mudgett v. Astrue*, No. 1:07-cv-00485-CL, Findings at Recommendation at 11-13 (D Or Apr. 11, 2008); *see also Arnold v. Astrue*, No. 3:09-cv-00540-MA, 2010 WL 3488980 at *10 (D Or Aug. 31, 2010).

On March 7, 2008, Dorothy Anderson, Ph.D., a reviewing psychologist for Disability Determination Services, found that Hartman could "understand, remember, and perform simple and routine tasks without special supervision.  More detailed tasks too daunting for this claimant. Has some issues with concentration but is able to do so in 2 hour periods with regular breaks in a routine setting."  Tr. 396.  The ALJ accepted Dr. Anderson's opinion, noting that she found Hartman could perform simple tasks due to her "moderate" limitations in concentration, persistence, and pace.  Tr. 23.

15 - FINDINGS AND RECOMMENDATION

The cases cited by Hartman caution only that an ALJ must explain how a "simple" work restriction adequately captures a "moderate" limitation in concentration, persistence and pace. Here the ALJ gave such an explanation.  Accordingly, Hartman fails to establish that the ALJ's conclusion that her RFC limited her to "simple" work is erroneous.

IV.    **Step Four Findings**

      A.    **Step Four Standards**

At step four in the sequential proceedings, the ALJ determines whether a claimant can perform her past relevant work.  20 CFR § 404.1520(a)(iv).  If she can perform such work, she is not disabled.  *Id.*  In making this determination, the ALJ refers to a claimant's past work as she actually performed it.  SSR 82-61, "Past Relevant Work – the Particular Job or the Occupation as Generally Performed," *available at* 1982 WL 31387, *1-2.  The Commissioner's Administrative Ruling specifically acknowledges that "some individual jobs may require more or less exertion than the [Dictionary of Occupational Titles] description."  *Id* at *2.  The claimant is the primary source of information about her past relevant work.  SSR 82-62, "A Disability Claimant's Capacity to Do Past Relevant Work, in General," *available at* 1982 WL 31386, *3.

      B.    **Analysis**

At the hearing, Hartman described her past work on an assembly line  at Datalogic Scanning.  Tr. 60-63.  When asked to explain what she did, Hartman stated that items came in little boxes and "you put things together."  Tr. 61.  She could not clearly remember what she did, but "they like came in a little box, you did something with them.  And you had to do it real fast or real quick."  Tr.  61.  When this was completed "you'd do another box."  *Id.*  Based upon this testimony, as well as on DDS's written summary of Hartman's past work in 1999 with Datalogic

Scanning (Tr. 57-59, 221 (Ex. 21E)), the vocational expert testified that "based on her description and my experience of various assembly jobs out in the world . . ." that Hartman was describing an assembler production position. *Id.* The vocational expert subsequently testified, in response to the ALJ's hypothetical question, that a person limited to sedentary work and the associated restrictions in Hartman's RFC could perform Hartman's past assembly production work as she performed it. Tr. 64.

Hartman now asserts that her testimony describing her past work was not coherent, that she did not actually perform assembly line work, and that the ALJ's findings regarding this work were consequently erroneous. In support, she cites a case where an ALJ's step four findings regarding the nature of a claimant's past relevant work diverged from the claimant's testimony regarding the nature of such work. *Vertigan v. Halter*, 260 F3d 1044, 1051-52 (9th Cir 2001). Hartman also points to a situation where an ALJ found that a claimant could perform only a secondary task associated with her past work. *Valenica v. Heckler*, 751 F2d 1082, 1087 (9th Cir 1985). Both citations are inapplicable here. Although vague, Hartman's testimony, as well as the written summary of her job, support a finding that Hartman performed assembly production work. Hartman also fails to show that the tasks which she described only related to a secondary task in that work. Thus, the ALJ's finding regarding the nature of this work should be affirmed.

///

///

///

///

///

17 - FINDINGS AND RECOMMENDATION

## RECOMMENDATION

Because the Commissioner's decision that Hartman was not disabled before June 1, 2007, is based upon correct legal standards and supported by substantial evidence, it should be AFFIRMED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due December 20, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 2nd day of December, 2011.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge